The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the initial hearing, the parties submitted a Pre-Trial Order, dated 24 October 1994, and this document is incorporated by reference as though fully restated herein.
2. Plaintiff has not worked for the defendant from 14 September 1993 and continuing through the date of the initial hearing.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing plaintiff was 20 years old. She was five feet four inches (64 inches) tall and weighed less than 110 pounds. For her education plaintiff had completed the tenth grade. For her work history plaintiff had worked two years at a seasonal job making Christmas wreaths; she had worked two or three months wrapping yarn, but quit the job to spend more time with her husband; and she had worked in a fast food restaurant, but had quite the job to spend more time with her daughter. In June 1993 plaintiff started working for defendant, which is also a seasonal business making candles. Plaintiff was laid off from defendant's employment on 13 September 1993, after about three months, and she has not sought any gainful employment since that time.
2. In her job with defendant, plaintiff inspected candles as they came down a conveyor belt. Those candles which were defective would be placed in a box on a table behind the conveyor belt. After a box was full, they would be stacked on a pallet. Each box weighed between 15 and 20 pounds and was ten inches high. Plaintiff initially stacked three boxes on top of each other; but beginning about three days before 6 August 1993, plaintiff started to stack six boxes on top of each other. When the boxes were stacked six high, the entire stack would be 64 inches high, with the bottom of the highest box 54 inches from the ground and plaintiff was 64 inches tall.
3. After stacking the boxes six high for two or three shifts, on 6 August 1993 as plaintiff was placing a box on top of a stack, she felt a pop in her right wrist. This incident was not an interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences. Plaintiff finished her shift that day and was not scheduled for work on 7 or 8 August 1993. Plaintiff returned to work on 9 August 1993 and reported to her supervisor that her wrist hurt. Her supervisor referred her to Dr. Thomas Shelburne.
4. Dr. Shelburne was concerned that plaintiff may have a wrist sprain with De Quervain's tenosynovitis. The doctor restricted plaintiff to light duty work for eight days. Defendant placed defendant on light duty or inspecting candles and working with novelty candles. Plaintiff continued to work at light duty, missing no time from work, until a general lay-off in September 1993. Dr. Shelburne examined plaintiff three times while she was still working for defendant.
5. Dr. Shelburne examined plaintiff five weeks after the lay-off; and Dr. Shelburne referred plaintiff to an orthopedic surgeon, seven weeks after the lay-off. Plaintiff was first examined by Dr. Whitman, an orthopedic surgeon, on 29 November 1993. At this time there was negative Tinnels tests, negative Phalens test and grip strength was normal. Dr. Whitman treated plaintiff conservatively for several months and referred her to physical therapy.
6. In February 1994 plaintiff decided to undergo surgery to her wrists. However, plaintiff had recently lost weight and did not want surgery while in a weakened condition.
7. Since the lay-off, plaintiff had stayed at home to care for her very young daughter. She has not applied for any jobs and believes she is not capable of any gainful employment from the time of the lay-off and continuing indefinitely.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
The terms "injury" and "accident," as used in the Workers' Compensation Act, are not synonymous. Rhinehart v. RobertsSupermarket, Inc., 271 N.C. 586 (1967). The accident must be a separate event preceding and causing the injury. Keyv. Wagner Woodcraft, Inc., 33 N.C. App. 310 (1977). An accident is an event which involves the interruption of the regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.Harding v. Thomas Howard Company, 256 N.C. 427
(1962). Because plaintiff was performing her regular job without any interruption, any incident on 6 August 1993 was not an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusion of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _______________ THOMAS J. BOLCH COMMISSIONER